## NEU *v.* NEU.

1. Action—Collusion.

    Collusion which may prevent the maintenance of an action may be a corrupt agreement between the parties to impose a case on the court, either by the suppression of evidence or the manufacture thereof, as well as an agreement that no defense shall be made.

2. Divorce—Collusion.

    An agreement between a husband and wife relating to a divorce is not necessarily collusive so as to preclude maintenance of suit therefor and whether or not it is depends upon whether it is an attempt to obtain a divorce not justified by the real facts, or whether it is thereby intended to practice fraud upon the court and obtain a divorce not justified by the real facts.

3. Same—Collusion.

    The mutual desire of parties to be divorced affords no reason why a divorce should not be granted if the facts so warrant and there is no agreement between the parties for the purpose of making evidence in favor of the divorce.

4. Same—Extreme Cruelty—Collusion.

    In suit for divorce on ground of extreme cruelty brought by husband against wife who was seven years his senior and lived in Germany, which was strongly contested by her in pleadings and proof by deposition and by efforts of her counsel, husband's testimony relative to agreement to separate and that he should have a divorce if it were found, after he left Germany, that reconciliation was impossible did not establish collusion entitling defendant wife to dismissal of bill.

    North and Wiest, JJ., dissenting.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 15, 1941. (Docket No. 57, Calendar No. 41,411.) Decided May 21, 1941.

Bill by Julius Neu against Clara Neu for divorce. Bill dismissed. Plaintiff appeals. Reversed.

*Clarence A. Brosteau,* for plaintiff.

McAllister, J. If the testimony of plaintiff is accepted, he is entitled to a divorce. There was sufficient evidence of cruelty to justify a decree on his behalf.

The parties were born in Germany. Plaintiff lived in that country until he was about 34 years old. He came to the United States approximately 16 years ago. He does not speak English well. Defendant still lives in Germany. Her testimony was taken by deposition in Germany and translated into English. Plaintiff claims that he has forwarded 2,700 marks to defendant since he left Germany. Her testimony is that she does not "believe" the whole sum would amount to $700. Apparently defendant is in the vegetable business with her sister in Germany. Her testimony does not disclose what she is doing at the present time. The parties have not seen each other in 16 years. Defendant says that she would not be willing to live with plaintiff if he should send for her. Plaintiff is about 50 years of age; defendant is about 57.

With regard to the question of collusion, plaintiff testified:

"When I had a chance to go to the United States, we talked it over, and we also discussed a divorce, and she wanted some money. * * *

"*Q.* Now, before you left Germany, did you have any understanding with her as to paying or giving her any money?

"*A.* Yes.

"*Q.* Will you explain that to the court?

"*A.* When I told her I had a chance to go to America, and we didn't come along anyway, I said, 'What you think about it?' She said, 'All right, we separate. We can't get along anyway,

we separate. We see how we make out if we are apart, and for a year or two if we don't get along, you have to send me 2,500 marks, so we try it out,' and I always try to make up to her, every letter, even when I was here. I wrote nice letters to her. I try to make up with her. I wrote in that letter she should stop that fight, and I am so far away from Germany, and I was really homesick, and she still fight, and that letter is written, she is fighting with me, and I was begging her to stop that fight.

"After I had been in the United States sometime, I finally decided that we couldn't get along together and decided to pay her 2,500 marks. According to my record I have sent her 2,700 marks. I sent the money in five and ten dollar bills in letters by registered mail. I understand that my wife is in a vegetable business with her sister in Germany. * * *

"When I left Germany, I did not have my mind made up to be free and clear, it was with an understanding not to fight.

"*The Court:* You say you had an agreement?

"*A.* Yes.

"*The Court:* What was that agreement?

"*A.* We separate, see how we get along for a year or a year or two. If we don't get along, I have to pay her 2,500 marks. If we get along she would come over here and join me.

"*The Court:* But if you did not get along, what was the agreement?

"*A.* Then I had to pay 2,500 marks, and she intend to go with her sister. Her sister had a business in a vegetable market.

"*The Court:* Yes. What were you to do?

"*A.* And she used that money for to go with her sister in that business.

"*The Court:* What about yourself?

"*A.* And I stay here and take a divorce.

"*The Court:* That was your understanding and agreement that you had between yourselves?

"*A.* Yes.

"*The Court:* That you should get a divorce here?

"*A.* Yes. * * *

"*The Court:* Well, I don't see how you can go any further in this case. There was collusion between the parties in the first place.

"*Mr. Nelson:* I think you misunderstood this, your Honor, I asked him before—I want to cross-examine him. He misunderstood as to the agreement.

"*The Court:* I don't think I misunderstood his answers.

"*Mr. Nelson:* He misunderstood. He is nervous. I spoke to the witness before he left, owing to the charges that he made in the answer—there was agreement as to separation, but not as to the divorce.

"*The Court:* We in this country are not cleaning up their old and dirty linens. I think they should go back where they came from. There was collusion between them. He said he had an understanding with her that he was to get a divorce and she was going in the vegetable business.

"*Mr. Nelson:* Well, he stated to me in the office that there was an agreement as to separation, but not divorce. I spoke to my client a few days ago on that.

"*The Court:* He understood the questions the court asked him.

"*Mr. Nelson:* May I cross-examine him on that point?

"*The Court:* You may examine him, but, as I say, it perhaps will not change this court's mind, if he is going to change his testimony. * * *

(*Witness,* continuing:) "I remember stating to you, at the time of signing the bill of complaint, that I had no agreement as to a divorce but I had an agreement as to a separation. When I told the Judge I had an agreement as to a divorce, I meant separation. I became mixed up, I am a little bit

nervous. We had an agreement that we separate and see how we would get along.''

Upon request of plaintiff's attorney to consult with opposing counsel, a recess was taken in the case on July 18, 1939. Thereafter, on July 31st, the court entered a decree denying plaintiff a divorce, on the ground of collusion. Plaintiff petitioned for rehearing, setting forth that, because of his lack of understanding of the English language, he did not clearly testify as to the actual facts with regard to the agreement between the parties; that because of a change in attorneys, he did not know that he could have been given the opportunity to produce further testimony. The petition for rehearing was apparently referred to the friend of the court, who made an investigation and recommended that a rehearing be granted. The trial court, however, on January 15, 1940, denied the rehearing on the ground that the suit was collusive.

This conclusion is rather anomalous, because of the fact that, although defendant was in Germany, an answer was filed denying plaintiff's allegations and asking for a dismissal of his bill of complaint, and defendant's deposition was taken in support of her answer. It is difficult to see how the suit could be dismissed for collusion, when it was contested as strongly as possible under the circumstances. Plaintiff did not rest his right to divorce upon any agreement between the parties, but upon allegations and proofs of cruelty.

With reference to the agreement which he testified to, it could be construed as an agreement to separate, although plaintiff states that, if the parties could not thereafter agree, he was to have a divorce. His right to the divorce, however, was not based upon such agreement. Collusion may be a corrupt

agreement between the parties to impose a case on the court, either by the suppression of evidence or the manufacture thereof, as well as an agreement that no defense shall be made. See 9 R. C. L. p. 377. An agreement relating to a divorce is not necessarily collusive. Whether it is, depends upon whether it is an attempt to obtain a divorce not justified by the real facts, or whether it is thereby intended to practice fraud upon the court. The mutual desire of parties to be divorced has been held to be no reason why a divorce should not be granted if the facts so warrant and there is no agreement between the parties for the purpose of making evidence in favor of the divorce. 17 Am. Jur. pp. 244, 245. The trial court did not deny plaintiff a decree for failure of proof, but only because of collusion, basing such finding of collusion on plaintiff's statement that he was to have a divorce, if it were found, after he left Germany, that the parties could not be reconciled. The case was strongly contested by defendant in pleadings and proof, and by the efforts of her counsel. There was no collusion. Under the proofs, plaintiff was entitled to prevail.

The decree dismissing the bill is vacated and a decree will be entered in this court granting plaintiff a divorce.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, and BUTZEL, JJ., concurred with MCALLISTER, J.

NORTH, J. (*dissenting*). This is a divorce case in which the circuit judge after considering the testimony of the respective parties entered a decree dismissing the bill of complaint on the ground "that there has been collusion in respect to the filing of the bill of complaint." The above decree was filed July 31, 1939. On August 1st, counsel who had

represented plaintiff at the hearing consented to a
substitution of attorneys, and substitution was filed
August 16th. On that date plaintiff's present coun-
sel filed a petition for rehearing. The circuit judge
on January 15, 1940, entered an order denying re-
hearing, as follows:

"In this cause, plaintiff's petition for rehearing
having come on to be heard and it appearing that
since the filing of said petition, the plaintiff has
failed to comply with the directions of the court in
said matter and the court being fully advised in the
premises,

"It is ordered that the plaintiff's petition for re-
hearing be and the same is hereby denied."

On February 3, 1940, plaintiff filed a claim of
appeal. Still later (April 25, 1940), the circuit judge
made and filed "findings of the court." We quote
the findings in full:

"In this case I find that the plaintiff husband left
Germany in the summer of 1925 (arriving in New
York in or about July 4, 1925), and the defendant
wife remained there. I also find and conclude as a
matter of law, that plaintiff made an agreement
with the defendant prior to leaving her, to the effect
that they should separate and that he at that time
fully intended to fulfill this agreement as he testi-
fied at the trial that he sent his wife the first pay-
ment shortly after he left her since it was under-
stood between them that he was to pay her 2,500 or
2,700 marks, equalling about $1,000, which is shown
by the testimony of the plaintiff, and it is apparent
that there was collusion between them. The plain-
tiff was given an opportunity to produce a witness
for the purpose of giving further testimony to prove
that there was no collusion in connection with his
application for a divorce. This he failed to do and
also failed to comply with the further directions
of the court in regard to the matter and therefore
the dismissal of plaintiff's bill of complaint for an

absolute divorce and the decree dismissing same is based upon the findings in this case. The plaintiff's petition for a rehearing was likewise dismissed because of his failure to comply with the directions of the court as aforesaid."

Appellant contends the circuit judge was in error both in decreeing dismissal of the bill of complaint and in subsequently denying the application for rehearing. Plaintiff's testimony was taken in open court. Defendant had appeared by counsel in the case who filed an answer for her in which she denied all the allegations of plaintiff's bill of complaint wherein defendant was charged with extreme and repeated cruelty; and defendant's deposition, taken on interrogatories in Germany, was received in evidence in support of her answer. At the hearing plaintiff was the only witness who gave testimony in his behalf. While plaintiff was being cross-examined, the court intervened and the following record was made:

"*The Court:* You say you had an agreement?
"*A.* Yes.
"*The Court:* What was that agreement?
"*A.* We separate, see how we get along for a year or a year or two. If we don't get along, I have to pay her 2,500 marks. If we get along she would come over here [to the United States] and join me. * * *
"*The Court:* Yes. What were you to do?
"*A.* And she used that money for to go with her sister in that business.
"*The Court:* What about yourself?
"*A.* And I stay here and take a divorce.
"*The Court:* That was your understanding and agreement that you had between yourselves?
"*A.* Yes.
"*The Court:* That you should get a divorce here?
"*A.* Yes."

The above was followed by a colloquy between the court and counsel, and the attorney who then represented plaintiff urged that his client had misunderstood the court and that the agreement was only one as to separation, not as to obtaining a divorce. Upon further examination plaintiff gave testimony to that effect. At this juncture the hearing before the court terminated, although it appears that there was a further consultation between the attorneys for the respective parties. The hearing terminated July 21, 1939, and, as above noted, the decree dismissing the bill of complaint was filed July 31, 1939.

Plaintiff did not make any further showing before the court touching the matter of collusion. It further appears from a letter embodied in the report of the friend of the court "That upon the hearing of the cause the plaintiff was directed by the court to pay to Mr. Hailer, the defendant's attorney, the sum of $150 as and for attorney fees." A formal order does not seem to have been entered. The above-quoted findings of the circuit judge disclose that at the time plaintiff's application for rehearing was denied he had not furnished any further testimony as to collusion nor had he complied with the order for the payment of attorney fees. It was for these reasons that the trial judge denied plaintiff's application for rehearing. On this record we would not be justified in reversing the decree dismissing the bill of complaint or in setting aside the order denying plaintiff's application for rehearing. The decree entered should be affirmed; but no costs should be awarded since appellee has not filed a brief.

WIEST, J., concurred with NORTH, J.