### KULL *v.* LOSCH.

1. DIVORCE—PROPERTY SETTLEMENT—CONTRACTS.

    Ordinarily a property settlement made between spouses in connection with a pending or contemplated divorce suit involves mutual promises and undertakings.

2. CONTRACTS—PROPERTY SETTLEMENT—CONSIDERATION.

    The promise of the wife in property settlement agreement, incident to pending suit for divorce, to accept certain conveyances and payments of money in full satisfaction of her

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur, Divorce and Separation, § 731.
[3] 17 Am Jur, Divorce and Separation, § 726.
[4–17] 17 Am Jur, Divorce and Separation, § 723 *et seq.*
[4–17] Validity of separation agreement as affected by fraud, coercion, unfairness, or mistake. 5 ALR 823.
[17] Provision for post-mortem payment or performance as affecting validity of separation agreement. 1 ALR2d 1264.

claims and her undertaking to leave the real estate and certain specified corporate stock to the husband, if he survived her and if she had not disposed of such property during her lifetime, was not a gratuity and cannot be said to be without consideration.

3. SAME—SEPARATION OF HUSBAND AND WIFE—PUBLIC POLICY.
   A contract made while spouses are living together, to effectuate a future separation, is void as against public policy.

4. SAME—PROPERTY SETTLEMENT AFTER SEPARATION OF HUSBAND AND WIFE—PUBLIC POLICY.
   A contract made after the separation of spouses for the purpose of effecting a property settlement is not invalid as against public policy.

5. DIVORCE—PROPERTY SETTLEMENT—COLLUSION.
   A property settlement agreement, made in connection with a collusive plan or scheme to obtain a decree of divorce, is open to objection and is sufficient to justify denial of a decree.

6. SAME—COLLUSION—QUESTION OF FACT.
   Whether or not there is collusion involved in obtaining a decree of divorce is generally a question of fact to be determined on the basis of the proofs.

7. SAME—PROPERTY SETTLEMENT—CONTRACTS—COLLUSION—PRESUMPTION—EVIDENCE.
   There is no presumption that a contract for the settlement of property rights, made in contemplation of a possible divorce, is necessarily collusive; hence the fact that the agreement is collusive must be established by proof and the court will look to all the facts and circumstances to determine whether the contract has that effect.

8. SAME—STATUTES—COLLUSION.
   The parties to the marriage relation cannot of their own volition dissolve the matrimonial contract as the relation and its dissolution are matters of public concern as well; hence, dissolution may be effected only for reasons set out in the statute and after full disclosure in court of all the facts on both sides.

9. SAME—COLLUSION—CONSPIRACY AGAINST JUSTICE.
   A collusive suit for divorce whereby the parties agree to cheat the court by falsifying or concealing the facts is deemed a conspiracy against justice.

10. SAME—COLLUSION—EVIDENCE—NONRESISTANCE.

A defendant in a suit for divorce is not bound to make a defense and no inference of collusion should be drawn from the mere fact of nonresistance, though such fact may be regarded as an important element in circumstantial evidence from which an inference of collusion would be permissible.

11. SAME—PROPERTY SETTLEMENT—NONRESISTANCE—COLLUSION.

A compromise and settlement of pecuniary and property issues in a suit for divorce is not against public policy but a bargain that there shall be no defense is collusion and any promise founded on such understanding cannot be enforced.

12. CONTRACTS—FRAUD—DURESS—EVIDENCE.

Evidence failed to justify an inference that wife was the victim of fraud or duress in the making of contract for settlement of property rights in the then-pending suit for divorce, which contract is now sought to be specifically enforced against her estate.

13. DIVORCE—PROPERTY SETTLEMENT—CONTRACTS—COLLUSION.

While a reward paid to a spouse to induce him or her to obtain a decree of divorce, to suppress the true facts, or to permit the obtaining of a decree on false or perjured testimony or fictitious grounds, violates recognized rules of public policy, a contract in settlement of property interests is not presumptively objectionable unless it is intended to induce obtaining a decree of divorce improperly, is collusive in the obnoxious sense, obtained by fraud or duress, or is inequitable.

14. CONTRACTS—PROPERTY SETTLEMENT—CONDITIONS.

A contract between parties to a pending suit for divorce relating to alimony or adjustment of property rights is not invalid because its effectiveness is made dependent upon a decree of divorce being granted, where it is made after separation, in good faith, without undue influence or imposition by one party on the other and is fair and equitable.

15. DIVORCE—PROPERTY SETTLEMENT—ATTEMPT TO OBTAIN UNJUSTIFIED DIVORCE.

Property settlement agreements between parties to pending suit for divorce are valid even though made in contemplation of divorce, their validity being dependent upon whether there was an attempt to obtain a divorce not justified by the real facts.

16. SAME—PROPERTY SETTLEMENT—CONTRACTS—PRESUMPTIONS.

> Persons entering into a contract relative to property settlement incident to pending suit for divorce are presumed to have acted lawfully in making such contract.

17. SPECIFIC PERFORMANCE—CONTRACT AS TO PROPERTY SETTLEMENT INCIDENT TO SUIT FOR DIVORCE.

> Contract whereby husband agreed to convey certain real estate, corporate stock, home and household furnishings, other personal property to wife and pay her a stated sum monthly upon the granting of a decree of divorce, which further stipulated that if the wife did not dispose of the real estate and corporate stock during her lifetime she would by will devise and bequeath the same to the husband, if he survived her, was specifically enforceable against the administrator of her estate and her heirs at law where husband had fulfilled his part of the agreement, decree of divorce was granted wife on her cross bill and she died without having disposed of the real estate and stock.

Appeal from Saginaw; O'Neill (James E.), J. Submitted June 14, 1950. (Docket No. 18, Calendar No. 44,772.) Decided October 2, 1950.

Bill by Walter A. Kull against John Losch and others for specific performance of a contract, to impress a trust upon property and for appointment of receiver and other relief. Decree for defendants. Plaintiff appeals. Reversed.

*Crane & Crane & Kessel* and *Curry & Curry,* for plaintiff.

*William C. O'Keefe,* for Walter Losch and others.

*Otto & Otto,* for John Losch and others.

CARR, J. The plaintiff in this case and Emma Edna Kull were married in June, 1912. Thereafter they lived together in the marital relation until the month of June, 1939, when they separated. There

were no children of the marriage. Approximately a year after the separation, plaintiff filed suit for divorce in the circuit court of Saginaw county, and the wife entered her appearance in the cause.

On the 13th of March, 1941, the parties entered into a written agreement with reference to a settlement of their property interests in the event that a decree of divorce was granted to either. The instrument executed by the parties recited the pendency of the divorce action, and the intention of Mrs. Kull to file an answer and cross bill in the proceeding. It set forth that upon the granting of the decree plaintiff would convey to her certain real estate, the home of the parties prior to their separation, and assign to her certificates representing 400 shares of the common stock of the General Motors Corporation. The agreement also provided for Mrs. Kull receiving the household furniture and other personal property, and for the payment to her, to and including the 1st of June, 1941, of the sum of $100 per month, and $25 per month thereafter during her lifetime, such payments to cease if Mrs. Kull remarried. It was further stipulated that if Mrs. Kull did not dispose of the real estate and corporate stock during her lifetime she would by will devise and bequeath the same to plaintiff, if he survived her. It is the claim of the plaintiff that the execution of the agreement followed an extended period of negotiation between the parties, in the course of which each was represented by an able and experienced attorney. It appears that the attorneys witnessed the execution of the instrument.

Following a hearing on the cross bill filed by Mrs. Kull she was granted a decree of divorce on the ground therein alleged, extreme cruelty. On the hearing Mrs. Kull testified with reference to the agreement that she had made with plaintiff for the adjustment of property interests, indicating that she

understood its provisions, and the obligations in terms imposed on her thereby. She also expressed her satisfaction with the arrangement that had been made, and her willingness to act accordingly. In the decree the court expressly approved the agreement, finding it to be "just and equitable." The provisions of the agreement were incorporated at length in the decree, including the promise by Mrs. Kull that, if she did not dispose of the real estate and the General Motors stock during her lifetime, she would by will devise and bequeath such property to the plaintiff, if he survived her.

The transfers contemplated by the agreement and the decree were made by plaintiff. The deed of the real estate was executed and delivered, and the certificates of stock in the General Motors Corporation were assigned. Said certificates were thereafter transferred to the name of Mrs. Kull and she continued to own them, as well as the real estate referred to, until the time of her death in March, 1945. Some testimony was offered in plaintiff's behalf on the hearing of the present case indicating that, following the granting of the decree of divorce, Mrs. Kull intended to make a will in accordance with her agreement. It does not appear, however, that she did so. The defendant Waldo Losch is the administrator of the estate, and the other defendants are the heirs at law of the decedent.

In his bill of complaint plaintiff asked specific performance of the property agreement with reference to the real estate and corporate stock referred to, and that defendants be decreed to hold such property in trust for his use and benefit. Plaintiff also sought ancillary relief by way of an injunction and the appointment of a receiver. Defendants by answer and motion to dismiss alleged that the agreement on which plaintiff based his right to relief was illegal and void because repugnant to public policy,

that the purpose thereof was to facilitate the granting of a decree of divorce to the end that plaintiff might marry another woman, that the agreement had for its object the concealment of the true cause for divorce, that the cross bill on which the decree was granted did not set forth therein statutory grounds for a decree dissolving the marital relation, and that the execution of the instrument in question was part of a "collusive agreement to obtain a divorce." Defendants further alleged in their pleadings that the purported contract was void for the reason that it was conditioned on the granting of a divorce decree.

Following a hearing in the circuit court the trial judge came to the conclusion that the promise of Mrs. Kull that plaintiff should have the real estate and stock in question on her death, if he survived her, and if she had not in the meantime disposed of the property, was a gratuity, and as such not enforceable against the defendants. He further expressed the opinion that the agreement in question was contrary to public policy. The opinion filed did not, however, contain any specific finding that the contract was collusive, or inequitable, or that Mrs. Kull was induced to execute it because of fraud or duress. A decree was entered, in accordance with the opinion of the trial judge, dismissing the bill of complaint, and plaintiff has appealed.

Counsel for defendants suggest in argument that the provision of the decree, incorporated therein in accordance with the property settlement, in terms requiring Mrs. Kull to make a will, was without force and effect. Attention is called to *Mertens* v. *Mertens,* 314 Mich 651, in which such a provision, based on the consent of plaintiff Mertens in open court, was inserted in a decree of divorce. It was held that the objection to such provision, made on appeal from the decree, was well founded. However, attention was called to the fact that there was

no contract between the parties with reference to the making of a will. In the case at bar the question at issue is the validity of the contract which plaintiff seeks to have enforced. That such is the issue was expressly recognized by counsel for defendants on the hearing in circuit court.

We are not in accord with the opinion of the trial judge that the undertaking on the part of Mrs. Kull with reference to the real estate and the corporate stock was a mere gratuity. Ordinarily a property settlement made between spouses in connection with a pending or contemplated divorce suit involves mutual promises and undertakings. The agreement in the instant case is no exception in this respect. Plaintiff agreed to make certain conveyances and payments of money. Mrs. Kull undertook to bind herself to accept such property and payments in full satisfaction of her claims, and further undertook by way of consideration for the plaintiff's promises, to leave the home and the General Motors stock to plaintiff, if he survived her, and if she had not disposed of such property during her lifetime. Considering the contract in its entirety, it cannot be said that the promise of Mrs. Kull was without consideration.

The supreme court of Missouri in *Crenshaw* v. *Crenshaw*, 276 Mo 471 (208 SW 249), discussed at some length the matter of consideration in a property settlement between spouses. There the parties to a pending divorce case entered into an agreement with reference to property interests. In accordance therewith the defendant husband undertook to pay the plaintiff the sum of $1,500 and to withdraw an answer filed by him in the divorce case. The plaintiff promised on her part that she would execute a deed releasing her dower in land owned by the defendant. A decree was granted to plaintiff, and immediately thereafter the deed in question was exe-

cuted and delivered. Following the death of the husband, plaintiff filed a petition in court for the assignment to her of dower in the lands of her former husband. It was her claim that the execution of the deed was wholly without consideration. In rejecting such contention, it was said in part:

"The question of alimony was an open one, which required proof in reference thereto, and which was dependent upon the exercise of a sound judicial discretion by the trial court in allowing same. With the answer on file she would have been put to her proof, not only as to the merits of the controversy, but likewise in respect to the alimony claimed. In other words, she was confronted with a *lawsuit,* and through the foregoing settlement was relieved from a contest as to the merits as well as concerning the question of alimony. The defendant in the divorce case, pursuant to said settlement, withdrew his answer, and paid the $1,500 agreed upon. Pursuant to the same settlement, the plaintiff executed the quitclaim deed releasing to said defendant her inchoate right of dower in the lands mentioned in the petition, and received a moneyed consideration for same. She was not only settling a lawsuit, but by virtue of the settlement, was obtaining a speedy trial, without any right of appeal being open to defendant. We are of the opinion, that the foregoing agreement was supported by a valid consideration."

The principal question in the case at bar is whether, as claimed by defendants, the contract was void because repugnant to public policy. It is argued that any agreement between spouses that has a tendency to bring about their separation or to destroy the marital relation is open to objection. This Court has recognized that such a contract made while the spouses are living together, to effectuate a future separation, is void. *Day* v. *Chamberlain,* 223 Mich 278. In the case cited the decision was based on the fact that there was no existing separation, and that

the parties lived and cohabited together for approximately 2 months following the making of the property settlement. The validity of such an agreement where a separation has already occurred has been recognized. *Randall* v. *Randall,* 37 Mich 563; *Palmer* v. *Fagerlin,* 163 Mich 345; *In re Berner's Estate,* 217 Mich 612. See, also, annotation in 12 LRA NS 848.

Under the practice in this State property settlements in pending divorce cases, or in contemplation of such proceedings where a separation has actually occurred, are ordinarily recognized as valid in the absence of a specific reason for a contrary holding. Such an agreement, made in connection with a collusive plan or scheme to obtain a decree of divorce, is open to objection, and is regarded as sufficient to justify denial of a decree. *Thompson* v. *Thompson,* 70 Mich 62. Generally speaking, whether there is collusion in a given instance is a question of fact to be determined on the basis of the proofs. See *Neu* v. *Neu,* 297 Mich 654. The question is one that ordinarily arises, if at all, on the trial of the divorce case. Such was the situation in *Thompson* v. *Thompson, supra,* in which a decree was denied because the Court found that the agreement between the spouses was illegal.

There is no presumption that a contract for the settlement of property rights, made in contemplation of a possible divorce, is necessarily collusive. *Giddings* v. *Giddings,* 167 Or 504 (114 P2d 1009, 119 P2d 280). In *Gentry* v. *Gentry,* 67 Mo App 550, it was said:

"The marriage relation, and when and for what causes it shall be dissolved, concerns the public as well as the individuals thus united. Such relation can only be dissolved for the reasons set out in the statute. Parties can not of their own volition rescind the matrimonial contract. The courts are justified in calling for a full and complete disclosure of

all the facts, on both sides, before dissolving the relation. And when the parties then institute a pretended suit, under a collusive agreement between themselves to cheat the court by falsifying or concealing the facts, and this collusion is shown to exist at any stage of the proceedings, it is deemed a conspiracy against justice and will 'stop the judicial wheels for the obvious reason that courts sit to advance justice and antagonize fraud.' "

It has been held that a bargain that no defense shall be interposed to a divorce action is collusive. *Davis* v. *Hinman,* 73 Neb 850 (103 NW 668, 11 Ann Cas 376). See, also, *Branson* v. *Branson,* 76 Neb 780 (107 NW 1011); *Berman* v. *Bradford,* 127 Me 201 (142 A 751); *Potter* v. *Potter,* 101 Fla 1199 (133 S 94). However, the fact that the agreement is collusive must be established by proof. In *Hudson* v. *Hudson,* 176 Mo App 69 (162 SW 1062), defendant in a divorce action sought to have a decree set aside on the ground that there was collusion between plaintiff and the attorneys for the defendant. In sustaining the action of the trial court in overruling the motion, it was said:

"The substance of her complaint is that her lawyers had a secret understanding with plaintiff that he should be allowed to obtain a decree without opposition. There is not the slightest evidence of the existence of an agreement so reprehensible. On the contrary, the evidence is convincing that defendant was faithfully and ably served by her attorneys and she has allowed her cupidity, so conspicuously exhibited throughout the history of this depressing case, to lead her, after the rendition of the decree, into a groundless attack on faithful servitors in the hope that she may keep what they gained for her and, perhaps, get more. We find no occasion for interfering with the conclusion of the trial court that the attorneys of defendant acted in good faith towards her and that their failure to appear at the

trial was due to her decision not to contest the case.

"Nor do we find good ground for the conclusion urged by defendant that the settlement contract should be regarded as evidence—conclusive evidence of a collusive agreement that plaintiff should not be resisted in his attempt to procure a divorce. A defendant in a divorce suit is not bound to make a defense (*Blank* v. *Nohl*, 112 Mo 159 [20 SW 477, 18 LRA 350], and authorities cited) and no inference of collusion should be drawn from the mere fact of nonresistance, though such fact may be regarded as an important element in circumstantial evidence from which such an inference would be permissible. A compromise and settlement of the pecuniary and property issues in a divorce suit is not denounced by law as immoral or against public policy 'but a bargain that there shall be no defense is collusion and any promise founded on such understanding cannot be enforced.' (*Blank* v. *Nohl, supra.*)"

There is no showing in the instant case to justify an inference that Mrs. Kull was the victim of fraud or duress in the making of the contract. If, as defendants claim, the agreement was illegal because collusive, both parties to it were charged with notice of that fact. No suggestion of illegality was made at the time of the trial of the divorce case. Mrs. Kull accepted the benefits of the agreement and received the property here involved. Obviously the trial judge who heard the divorce case did not consider that the settlement between the parties was open to objection. No claim is now made that it was unfair or inequitable. Neither is there any suggestion that the decree of divorce was, or is, subject to attack. Mrs. Kull did not question it during her lifetime, and the record before us does not indicate that she would have been in any position to do so. *Simons* v. *Simons,* 47 Mich 253; *Carlisle* v. *Carlisle,* 96 Mich 128.

In view of the suggestion made by defendants in their pleadings, that the cross bill filed by Mrs. Kull did not set up statutory grounds for a decree of divorce, the case of *Owen* v. *Yale,* 75 Mich 256, is of interest. There the defendant, who was the plaintiff in a divorce action, was held bound by a consent decree in her favor. It appeared that the averments of her bill of complaint were defective, but the Court determined that the "decree was not absolutely void, whether erroneous or not." The Court further determined that the parties had the right to make the property settlement involved, citing *Randall* v. *Randall, supra.*

It may be conceded that a reward paid to a spouse to induce him or her to obtain a decree of divorce violates recognized rules of public policy. The same is true of an undertaking to suppress the true facts in a divorce case or to permit the obtaining of a decree on false or perjured testimony or fictitious grounds. The essence of such an agreement must be regarded as a bar to the granting of a decree of divorce, or to other relief based on the theory of a valid contract. It does not follow that a contract in settlement of the property interests of spouses involved in divorce litigation is presumptively open to objection. It is invalid when intended to induce obtaining a divorce decree improperly, is collusive in the obnoxious sense above indicated, or is obtained by fraud or duress. Likewise, recognition of an agreement that is inequitable should be denied.

While it is impossible to reconcile all of the decisions relating to the question, we think that the trend of the later cases is in accord with the statement of the rule as set forth in the annotation in 109 ALR 844, as follows:

"As stated in the prior annotation, according to the weight of authority, an agreement relating to

alimony or the adjustment of property rights, which does not directly induce the procurement of a divorce, does not constitute such collusion as will bar a decree. Although such an agreement may contemplate the possibility of a divorce, and depend for effectiveness on its being obtained, it will not bar a decree, provided it is made in good faith, without undue influence or imposition by one party on the other, and is fair and equitable. In other words, there seems to be no presumption that a contract for the settlement of property rights, made in contemplation of a possible divorce, is necessarily collusive, but in each particular case the court will look to all the facts and circumstances to determine whether the contract has that effect."

In *Spence* v. *Spence*, 290 Mich 98 (124 ALR 141), the spouses, prior to the hearing of the divorce action, entered into an agreement which was to be effective in its main provisions if either of the parties obtained a decree of divorce. The matter of paying temporary alimony on the institution of suit by the wife was also covered. Some years after the granting of the decree it was modified, and the agreement referred to was incorporated in it. In subsequent contempt proceedings the question arose whether payments referred to in provisions of the agreement embodied in the modified decree were in the nature of alimony or property settlement. The decree provided in substance that the payments of money and performance of other provisions in the agreement, on the part of the defendant, should be in lieu of plaintiff's dower rights in his property, and in full satisfaction of any claims that she might have therein. The agreement referred to the payments as alimony, and the court construed them accordingly. It does not appear that the validity of the contract between the parties was questioned in the trial court or before this Court. Notwithstanding that its effect

was conditioned on the securing of a decree of divorce by one of the parties, its legality was impliedly recognized.

Defendants rely on and quote at some length from the opinion in *Brown* v. *Brown,* 8 Cal App2d 364 (47 P2d 352). There an agreement between spouses, as found by the trial court, provided in substance that a divorce should be obtained by one or the other, and the adjustment of their property rights was conditioned thereon. A decree was granted, and subsequently the plaintiff brought suit based on the contract. Referring to the finding of the trial court that the promises of the defendant were made "in contemplation of and to facilitate, and conditioned upon, a dissolution of the marriage," recovery was held to be precluded. It does not affirmatively appear whether the parties to the case were separated at the time their agreement was made. The language of the opinion suggests that the trial court came to the conclusion that there was collusion between the spouses.

In *Hill* v. *Hill,* 23 Cal2d 82 (142 P2d 417), the property settlement agreement in question was conditioned on the wife obtaining a decree of divorce. She did so, the decree reciting that the payment of alimony was covered by the property settlement which the court expressly approved. Thereafter action was brought on the agreement, and the defense was interposed that it was void as against public policy. The trial court so held and dismissed the action. The supreme court of the State reversed the decision, expressly disapproving of the language of the opinion in *Brown* v. *Brown, supra,* to the effect that a contract conditioned upon a dissolution of a marriage is unenforceable. In reaching its conclusion the court recognized that:

"Agreements not to defend or to abandon a defense in a divorce action, to destroy or conceal evi-

dence in proceedings for divorce, and to procure or furnish testimony of certain facts which will successfully support or defeat a divorce action, or which provide that payment to the party procuring evidence to be used in such an action is contingent upon the result of the action have been held void as parts of collusive arrangements to facilitate divorce."

Citing numerous prior decisions in California and in other States, the court further said:

"Accordingly, by the great weight of modern authority, property settlement agreements are upheld even though made in contemplation of divorce. * * * The rule is stated in 17 Am Jur, § 499, as follows: 'The validity of such agreements depends on whether there is an attempt to obtain a divorce not justified by the real facts and thus to practice a fraud upon the court. * * * Under this rule, where a separation has been induced by the vicious conduct or disability of one of the parties, without inducement or fault of the other, a contract looking to a settlement of property rights and the proper maintenance of the one not in fault is in no sense repugnant to public policy.' * * *

"Such contracts made in contemplation of divorce are entered into upon the assumption that divorce will follow. (See *Bishop* v. *Bishop* [Mo App], 162 SW2d 332, 335.) It would therefore seem proper for the parties to provide for any possible failure of this assumption in their contract. And it has accordingly been held that agreements conditioned upon divorce, in the sense that they are to become effective upon dissolution of the marriage, do not contravene public policy. (*Miller* v. *Miller*, 284 Pa 414 [131 A 236]; *Bishop* v. *Bishop, supra; Frothingham* v. *Anthony* (CCA), 69 F2d 506; *Phillips* v. *Phillips*, 39 RI 92 [97 A 593]; *Lubbell* v. *Stolls*, 202 NYS 229; cf. *Darling* v. *Darling*, 241 App Div 57 [270 NYS 557]; *Maisch* v. *Maisch*, 87 Conn 377 [87 A 729]; *Clarke* v. *Clarke*, 42 Times LR [Eng] 132; note 109

ALR 844; see *Stokes* v. *Anderson,* 118 Ind 533, 552 [21 NE 331, 4 LRA 313], 2 Bishop, Marriage, Divorce and Separation, § 702.)

"Recent California cases have upheld property settlement agreements thus conditioned upon divorce."

In support of the conclusion reached, the court cited, among other decisions, *Cookinham* v. *Cookinham,* 219 Cal 723 (28 P2d 1045); *Ettlinger* v. *Ettlinger,* 3 Cal2d 172 (44 P2d 540); *Queen* v. *Queen,* 44 Cal App2d 475 (112 P2d 755). The decision has been followed in later California cases, including *Brainard* v. *Brainard,* 82 Cal App2d 478 (186 P2d 990).

In *Frothingham* v. *Anthony,* 69 F2d 506 (certiorari denied, 292 US 655 [54 S Ct 865, 78 L ed 1503]), the circuit court of appeals of the first circuit sustained a written agreement between a husband and wife made after the former had instituted suit for divorce and contemporaneously with the filing of a cross petition by the latter. Said agreement was in terms to be inoperative in the event that the court did not grant a divorce to the wife prior to a specified date. In connection with such agreement the mother of the husband executed an instrument in which she guaranteed the payments for which her son had contracted. Suit was brought on the collateral undertaking and the question arose in consequence as to the validity of the contract between the spouses. In sustaining the agreement, the court referred to the law of Rhode Island, where the agreement was made and the divorce decree granted, saying:

"Nowhere have we been able to discover from an examination of the reported decisions of the Rhode Island supreme court, in its interpretation of this and other sections of the statute, any inhibition placed upon the parties against undertaking by ami-

cable agreement to adjust their differences in respect to collateral and incidental matters, provided that there be involved no collusion or fraud upon the court in respect to the trial upon its merits in open session of all matters relating to the severance of the bond of marriage between them. While that court seems to look with no disfavor upon such agreements between parties, thus often avoiding protracted trials and notoriety harmful to children and others, it still retains a jurisdiction under the statute, irrespective of the agreements entered into, to deal with the custody of children and their support, as well as any unexecuted portion of an agreement for the maintenance of a wife which is embodied in a final decree.   *   *   *

"The agreement now before us was in no respect unusual or out of harmony with the limitations laid down by the Rhode Island courts. It is an agreement seemingly fair, certainly from the point of view of the divorced husband, as most of its provisions, apart from the clause relative to the household furniture, relate to the maintenance and support of the 2 minor sons. The agreement, so far as it deals with the custody and rights of visitation of these children, although remaining subject to revision or alteration by the court, is in no wise opposed to sound public policy. The essential provisions of the agreement were embodied in the final decree of the court itself. Nowhere does there appear the slightest direct evidence, nor basis for compelling inference, that the court was in any way misled or misinformed. As we have said, the defendant's principal contention was that the agreements were bad upon their face.

"All such agreements as that here involved are naturally conditioned upon the event and effect of the court's decision. Such a condition is not a defiance of the Rhode Island statute, but a recognition that the parties may not bargain in respect to the continuance of the bond of marriage."

The court also cited the decision of the supreme court of Rhode Island in *Phillips* v. *Phillips,* 39 RI

92 (97 A 593). There the plaintiff wife brought suit for divorce, asking for alimony and the custody of minor children. Thereafter, and before the entering of a final decree in the case, a trust agreement was entered into between the parties, providing for the assignment by the husband to a trustee, for the benefit of the plaintiff, certain stocks, bonds, and other property. The agreement, to which the wife was a party, was declared to be in bar "of any and all claims.for allowance or alimony in said petition for divorce and in satisfaction and bar of the dower or thirds to which by the common law, or by custom or statute, she might be entitled." After the decree of divorce had been entered, plaintiff filed her petition for an allowance of alimony, and the question in consequence arose as to whether the agreement con-. stituted a bar to the proceeding. In affirming a decree of the trial court dismissing the petition, it was said:

"The petitioner further objects to the decree appealed from on the ground that the trust agreement, on the provisions of which said decree is based, is not valid and enforceable. In support of this attack the petitioner has cited to us a number of cases from other jurisdictions, in which certain agreements between parties to divorce proceedings, with reference to the amount of the wife's alimony, have been considered. In some of the older of these cases such agreements have been disregarded, apparently, because of the incapacity of the wife to contract with her husband until the bond of marriage had been dissolved. In a few others such agreements have been held to 'open a door for the attainment of divorce by collusion' and hence to be against public policy and void. In most of the cases cited, while the courts recognized the competency of the parties to make such a contract, the particular agreement under consideration has been treated as a nullity, because the provisions contained therein were un-

just to the wife or because in the circumstances of the particular case the court found such agreement to be part of a collusive scheme to impose upon the court in which the divorce proceeding was pending.

"The broad terms of our statute with reference to the contracts which a married woman may make permit the petitioner to enter into this contract with her husband, and in our opinion agreements of this character are not in their nature void as being contrary to public policy.

"Because it is the policy of our law to preserve the marriage relation, and not to grant a divorce upon the agreement of husband and wife, or when it appears that the alleged cause of complaint has been occasioned by the collusion of the parties, the courts will not recognize or enforce an agreement as to alimony if it appears that such agreement is part of a bargain for facilitating the procurement of a divorce. Also because of the nature of divorce proceedings the court will carefully scrutinize such an agreement and will not enforce it if its provisions are unjust to the wife or if it appears that fraud has been practiced upon her. The agreement here in question appears to have been entered into fairly while the interests of the petitioner were guarded by her solicitors. The provision for the petitioner made therein seems to be reasonable in amount. Two justices of the superior court considering said agreement at different hearings have each given it their approval. The claim is not made and nothing has been brought to our attention in the case which raises a suspicion that the divorce proceedings were not prosecuted and defended in good faith or that a promise to assist in practicing deception upon the court formed any part of the consideration of said agreement. In our opinion the justice of the superior court was warranted in treating said agreement as valid and enforceable."

Of similar import is *Geis* v. *Gallus,* 130 Or 619 (278 P 969), where it was said:

"In order to constitute collusion there must be an agreement between the parties. Collusion is not necessarily established by an agreement for the division of property in the event a divorce is granted. It is not collusion for defendant to voluntarily submit to service of process: 19 CJ, p 92, § 215."

In *Burgess* v. *Burgess,* 17 SD 44 (95 NW 279), the parties had separated because of mutual difficulties. The husband desired a decree of divorce and wrote to the wife advising her in substance that he would convey certain land to her by deed. In making such promise he indicated that in return he wanted "a mutual settlement and bill, for which I will pay all costs, using the lightest cause possible." Thereafter the husband obtained a decree of divorce, the wife not appearing in the suit. The property not having been deeded to her as agreed, she brought an action against her former husband for specific performance. Defense was made on the ground that the contract sought to be enforced was illegal and void because repugnant to public policy. The trial court held otherwise, and granted relief to the plaintiff. In upholding the decision on appeal, it was said:

"The law of this State expressly permits contracts between husband and wife with respect to the property of each, but forbids certain agreements, as collusive, which are intended to alter or to promote the dissolution of the relation of husband and wife. Contracts relating to alimony are being constantly made and enforced, while agreements which contravene the policy of the law in relation to granting divorces are everywhere regarded as illegal. To which class does the contract in this action belong? The answer to this inquiry depends upon the intention of the parties as shown by the facts contained in the agreed statement. An interpretation which gives effect is preferred to one which makes void. CL 1887, § 4728. All persons are presumed to have

acted lawfully. Unless clearly inconsistent with any reasonable view of the agreed facts, it should be inferred that these parties did not intend to violate the law, or to do any wrongful act. This, in substance, is all that is shown, tending to prove collusion: The marital relations of the parties being unsatisfactory, the defendant wrote to the plaintiff: 'I * * * will prove up the land and send you the deed as soon as possible. All I ask is a mutual settlement and bill, for which I will pay all costs, using the lightest cause possible.' This was an unconditional promise to convey the land. The plaintiff was not asked to commit, or to appear to have committed, or to be represented in court as having committed, any act constituting a cause for divorce. She was not asked to refrain from appearing in the contemplated action for divorce, nor does it appear that she ever agreed to refrain from making a defense. It is true that she did not appear, relying, as she had a right to, on the defendant's express promise, and was thus deprived of an opportunity to have her property rights and the propery rights of her daughter determined by the court. But it does not affirmatively appear, and we think it cannot be inferred, that she made any agreement as a consideration of receiving the land, which, if shown, would have required the court to deny her husband a divorce on the ground of collusion. We think the transaction can and should be regarded as an agreement merely affecting property rights, and not as one which contravenes the policy of the law, or which was otherwise contrary to good morals."

The above decision was followed in *Nelson* v. *Nelson,* 71 SD 342 (24 NW2d 327). See also, *North* v. *North,* 339 Mo 1226 (100 SW2d 582, 109 ALR 1061); *Tilles* v. *Commissioner of Internal Revenue* (CCA), 113 F2d 907 (certiorari denied, 311 US 703 [61 S Ct 143, 85 L ed 456]); *Welsh* v. *Welsh,* 230 Mo App 1006 (93 SW2d 264); *Dennison* v. *Dennison,* 98 NJ Eq

230 (130 A 463) ; *Gallemore* v. *Gallemore,* 94 Fla 516 (114 S 371).

The application of the rule recognized in the recent decisions on the subject leads to the conclusion that the agreement in the instant case should be sustained. The suggestion that Mrs. Kull was forced to seek a divorce that she did not desire is not supported by proof. Neither does it appear that the agreement contemplated the suppression of facts that might have resulted, if known, in the denial of a decree of divorce to Mrs. Kull. The record indicates that the judge who heard the divorce action was fully advised and that he was satisfied that no reprehensible conduct was involved. The mere fact that the operation of the contract was conditioned on the parties being divorced is not controlling. The record does not justify a conclusion that the parties were guilty of collusion or that the purpose of the agreement was to induce Mrs. Kull to seek and obtain a decree of divorce.

A decree will enter in this Court in accordance with the prayer for relief in the bill of complaint, reversing the decree of the circuit court, with costs to plaintiff.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.