## MAYNARD v. MAYNARD.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.
   Trial judge's finding of extreme cruelty on part of defendant wife is not disturbed, where testimony as to whether one or both were at fault is in conflict and trial judge was in a better situation than the Supreme Court to know and determine whether defendant committed acts of extreme cruelty.

2. SAME—PROPERTY SETTLEMENT AGREEMENT—PUBLIC POLICY.
   Property settlement agreement, made while parties were still living together but designed to operate as an inducement to cause a separation of parties now litigating suit for a divorce, was void as against public policy.

3. SAME—DIVISION OF PROPERTY—ATTORNEY FEE.
   Award of $3,500 to defendant wife and a fee of $175 to her attorney upon divorce from elderly husband after marriage lasting 17 months *held*, fair and equitable in view of all of the circumstances, including the fact that she had earned $700 during the marriage and spent most of it for household purposes and fact that plaintiff had property valued at about $22,000 at time of marriage.

4. SAME—COSTS—APPEAL BY WIFE.
   No costs are awarded either party upon affirmance of decree for plaintiff husband on wife's appeal, where he did not ask for costs.

Appeal from Bay; Liebrand (Karl K.), J. Submitted October 4, 1950. (Docket No. 12, Calendar No. 44,913.) Decided December 6, 1950.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error, §§ 896, 901.
[2, 3] 17 Am Jur, Divorce and Separation, § 445.

Bill by Adolph G. Maynard against Margaret K. Maynard for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Raphael G. Phillips,* for plaintiff.

*Charles Upton Shreve,* for defendant.

REID, J. This is a suit for divorce. The parties were married February 15, 1947, in Detroit. Plaintiff and defendant lived together until July 16, 1948. The bill of complaint was filed July 27, 1948. There are no children born of the marriage.

Plaintiff was born in 1866 and had lived happily with his first wife for 53 years. During most of the period of his first marriage plaintiff worked as a foreman in a shop or for a building contractor and later for Packard Motor Car Company, until he retired about 1942. Plaintiff's first wife died before his marriage to the defendant. Defendant had been previously married. Defendant was 57 years old in December, 1949.

The parties had their first argument about 6 hours after they were married. The record discloses that defendant would not go out places with the plaintiff for the reason, as she stated to him, that people would think that plaintiff was her father. She also said that she didn't want him to go along with her because he was "excess baggage," and whenever they had an argument she would call him a liar. It also appears that she called him a "dirty skunk" a couple of times. She continued to call him a liar at different periods. It also appears that for periods of 3 and 4 days at a time she refused to talk with him. It also appears that defendant told plaintiff, "I don't want to get along with you." Further, she said to

plaintiff, "You're talking childish, you're getting childish."

Other testimony appears in the case distinctly indicating that the parties could not live happily together.

Defendant in general by her testimony would make out that the plaintiff was equally responsible for their differences.

The trial judge concluded that the plaintiff had proved his case and that the defendant was guilty of extreme cruelty, and awarded a decree of divorce to plaintiff. The trial judge was in a better situation than we are to know and determine whether plaintiff seemed to be a man of sensitivity in whose case words on the part of defendant such as are recited above would be extremely cruel to him.

Defendant stresses in her brief the case of *Kennedy* v. *Kennedy,* 325 Mich 613. However, no occasions of cruelty or causes of divorce were shown in the *Kennedy Case* similar to those which appear in the instant case.

On or about July 12, 1948, after the parties had had a discussion over the question whether they could continue to live together and while they were still living together, plaintiff went to an attorney in Detroit who had been acting for him at times for a number of years, and caused the attorney to draw up a property settlement which has been offered in evidence in the case. Stipulation 1 of the agreement, after a preamble reciting the marriage and the mutual desire of the parties to adjust and settle their respective marital rights and claims against each other, is as follows:

"That parties agree one with the other that each may from henceforth live separate and apart from the other."

This clause characterized the settlement agreement and differentiates it from the agreement in the case of *Kull* v. *Losch,* 328 Mich 519, in which case the parties had already separated and the settlement agreement did not operate as an inducement to cause the separation. In the instant case the quoted paragraph was an agreement to permit and to bring about a separation which had not actually as yet occurred. The settlement agreement in the instant case is void, as against public policy. *In re Berner's Estate,* 217 Mich 612, 620; *Day* v. *Chamberlain,* 223 Mich 278.

The trial court found that at the time of the marriage plaintiff was possessed of property worth about $22,000. Plaintiff had 2 policies of insurance on his life of a value of about $3,000 in the event of his death. The house and its contents where the parties lived in Detroit had a value of about $6,200. The balance of the estate seems to have been in cash. The trial court by its decree awarded the house and its contents, excepting defendant's own personal effects and furnishings, to plaintiff. Plaintiff was also awarded as his own, the personal effects, household goods and furnishings owned by him at the time of the marriage and also, household goods and furnishings purchased by plaintiff after the marriage. Also, to plaintiff was awarded the ownership of his life insurance policies.

The decree required plaintiff to pay defendant a total of itemized credits amounting to $3,500 forthwith on the signing of the decree, which $3,500 was secured by a decree lien awarded to the defendant, which sum of $3,500 (according to the recitals in the court's opinion) included a credit of $100 a month for the 17 months the parties had lived together. Defendant had earned apparently about $700 during the marriage, a considerable part of which was spent for household purposes, including $100 for bathroom

remodeling. The court allowed $500 to her on account of contributions on her part as a part of the $3,500 awarded to her.

We consider the award made by the trial court to the defendant a fair award in view of all the circumstances of this case. The decree appealed from is affirmed. Plaintiff had already paid $75 of defendant's attorney fees, under the rule of the court, at the time of the rendition of the decree, and the decree required him to pay an additional $100. Plaintiff does not ask for costs. No costs are awarded to either party.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.