## NOGAJ *v.* NOGAJ.

1. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF FACT.
   The Supreme Court hears chancery cases *de novo* on the record but gives great weight to the findings of fact of the judge who heard the evidence.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 814, 815.
[2] 14 Am Jur, Covenants, Conditions and Restrictions § 3; 19 Am Jur, Estates § 62 *et seq.*
[4] 19 Am Jur, Estates § 65.
[6, 7] 33 Am Jur, Life Estates, Remainders and Reversions § 207 *et seq.*
[8] 35 Am Jur, Marriage § 247 *et seq.*

2. DEEDS—CONSTRUCTION—INTENT—SEPARATE INSTRUMENTS.

Trial court's ascertainment of intent of condition subsequent in deed whereby title to property conveyed to grantees therein as tenants by the entireties was to devolve upon wife alone when the husband's conduct was such as induced her commencement of divorce proceedings *held*, proper, where derived in part from settlement agreement the parties had shortly theretofore entered into after previous reconciliation had been effected between them.

3. SAME—CONSTRUCTION—INTENT—SEPARATE INSTRUMENTS.

Generally, separate deeds or instruments, executed at the same time and in relation to the same subject matter, between the same parties and made as parts of substantially 1 transaction, may be taken together and construed as 1 instrument.

4. SAME—CONDITIONS SUBSEQUENT.

Conditions subsequent in a deed are not favored (CL 1948, § 554.46).

5. SAME—CONDITIONS SUBSEQUENT.

A breach of a condition subsequent in a deed is not to be lightly inferred (CL 1948, § 554.46).

6. SAME—CONDITIONS SUBSEQUENT—ESTATES BY ENTIRETIES.

The filing of a bill for divorce and the securing of a temporary injunction by a wife to restrain her husband from occupancy of their home because of a repetition of physical violence toward her constituted an election on her part to forfeit the estate which had been granted him in a deed to them of property which had theretofore been solely hers and which she had conveyed to them as tenants by the entireties subject to a condition subsequent that his conduct should not provoke suit for divorce by her (CL 1948, § 554.46).

7. SAME—CONDITIONS SUBSEQUENT—WAIVER OF FORFEITURE—EVIDENCE.

Evidence presented in father's suit against his 2 children wherein he sought sole ownership of property which had been deeded to him and his late wife as tenants by the entireties subject to a condition subsequent that his conduct should not provoke her to again institute suit for divorce *held*, not to have shown a waiver of her forfeiture of his entireties interest in the property by reason of his misconduct (CL 1948, § 554.46).

8. SAME—CONDITIONS SUBSEQUENT—PUBLIC POLICY—RESTRAINT OF MARRIAGE—INDUCEMENT TO DIVORCE.

Principles that contracts or devises in general restraint of marriage or that have the effect of inducing divorce or separation

are against public policy and void do not apply as to condition
subsequent of deed whereby title had been conveyed to husband
and his late wife as tenants by the entireties subject to condi-
tion that sole title was to vest in her if his conduct should again
cause her to institute suit for divorce (CL 1948, § 554.46).

Appeal from Jackson; Arch (Charles O.), J., pre-
siding. Submitted October 29, 1957. (Docket No.
95, Calendar No. 47,102.) Decided April 14, 1958.

Bill by Frank Nogaj against John W. Nogaj and
Virginia J. Nogaj (now Kryst) to have declared
void a condition subsequent contained in a deed, and
to clear title of their claim as heirs. Bill dismissed.
Plaintiff appeals. Affirmed.

*Dahlem & Dahlem,* for plaintiff.

*Best & Falahee* (*Kleinstiver & Anderson,* of coun-
sel), for defendants.

EDWARDS, J. This is a proceeding in equity where-
in a father seeks sole ownership of the previous
family domicile as against his 2 children. The house
had originally belonged to plaintiff's wife, now de-
ceased. She had conveyed it to herself and plaintiff
by the entireties, but with right of re-entry reserved
to her upon a condition subsequent. The defendant
children contend the condition subsequent occurred,
that title revested in their mother, and that when
she died without a will each of the 3 parties to this
suit acquired a 1/3 interest in the property as heirs.*
The plaintiff father's contention is that, while the
deed was valid, the condition was void, and that he
thus is entitled to a decree vesting sole title in him.
The judge who heard this matter found the condi-
tion valid and dismissed plaintiff's bill of complaint.

* See CL 1948, § 702.80 (Stat Ann 1943 Rev § 27.3178 [150]).—
REPORTER.

To tell the story of the disputed condition in the deed, we must relate the facts of a somewhat stormy marriage.

Frank Nogaj married Veronica Ziemba on August 12, 1930. At the time of this marriage Veronica owned a house and lot at 1905 Pringle, in Jackson, Michigan, which she had acquired through a prior marriage. Veronica's sole ownership of the house in which the parties lived (and which plaintiff largely maintained) was a source of friction between husband and wife. Her son testified, "The argument was always that property."

The children also testified that there were numerous occasions of violent displays of temper toward their mother by their father, sometimes involving physical violence. In 1945, 1946 and 1947 serious marital discord developed and Veronica several times sought legal counsel looking to a divorce.

In the course of efforts to reconcile the parties, on 1 of these occasions, Veronica's attorney discovered that a mistake had been made in the execution of a deed the preceding year by Veronica in favor of her children, reserving a life interest to her husband. As a part of the reconciliation efforts, the attorney drafted what was termed "Property Settlement Agreement," and both Frank and Veronica signed it.

Since it recites both the reasons for and nature of the condition subsequent which here confronts us, we will recite its terms in full:

"This agreement entered into this 26th day of April, 1947, between Frank Nogaj, hereinafter referred to as party of the first part, and Veronica Nogaj, his wife, hereinafter referred to as party of the second part.

"Whereas, prior to the marriage of the parties herein identified, Veronica Nogaj, the party of the second part, was previously married and at the time of her marriage to the party of the first part was the

sole owner of certain property more particularly described as:

"The E 1/2 of lots 1 and 4, block 3 of Carr's East Addition to the city of Jackson, according to the recorded plat thereof.

"Whereas, certain differences have arisen between the parties in the past; and

"Whereas, party of the second part made an attempt to settle these differences with respect to the ownership of this property and executed a deed on February 2, 1945, in which the scrivener erred in that he permitted the property to be conveyed from Veronica Nogaj to her children with a life estate to her husband; and

"Whereas, the intention was otherwise; and

"Whereas, there has been further difficulty between the parties hereto over the ownership of this land which has resulted in dissension; and

"Whereas, the parties hereto wish to settle their differences without the intervention of a court.

"Now, therefore, they do hereby agree as follows:

"1. That they will jointly employ counsel to have the deed hereinabove described and recorded in liber 446 at page 371 in the Jackson county register of deeds office, set aside, amended, declared void or corrected so as title to this property be held by them, that is, Frank Nogaj and Veronica Nogaj, as husband and wife, as tenants by the entireties, subject however, to the following conditions: That if further differences arise between the parties hereto, that is, if physical violence is exercised upon Veronica Nogaj by Frank Nogaj or should any other grounds for separation or divorce arise, and if she chooses to institute separation proceedings by way of separate maintenance or divorce, Frank Nogaj does hereby agree to relinquish all his right, title and interest in the property hereinabove referred to and execute the necessary deed in accordance with the arrangement herein set forth; and upon failure to execute such deed, this agreement is to be considered as a property settlement and to become part of any decree of

divorce that shall enter and be valid and the same is hereby acknowledged by the party of the first part as a release of all his right, title and interest, subject, however, to the conditions as hereinabove set forth."

Upon successful termination of the legal proceedings called for above, on August 28, 1947, Veronica conveyed her interest in the property to the secretary of her attorney, acting as "straw man," and a deed back to herself and her husband as tenants by the entireties was executed, subject, however, to the following condition:

"In the event that separate maintenance or divorce proceedings are instituted, it is hereby understood that title to this property shall vest in Veronica Nogaj, this condition being in accordance with an agreement between the second parties hereto dated April 26, 1947 wherein it is recited that the parties shall hold the property as tenants by the entireties subject to defeasance upon the institution of separate maintenance or divorce proceedings between the parties, it being the intention to remove this property from any property settlement that may be necessary, it being understood that the title shall vest completely and solely in Veronica Nogaj at the time of the filing of any separate maintenance or divorce proceedings."

Marital troubles, however, did not end. Veronica filed suit for divorce in 1948, only to withdraw it within a few days. But in 1951 an apparently more serious quarrel developed. The daughter testified concerning this episode:

"*Q.* Do you recall the incident which occurred in the latter part of February, 1951, when your father was taken into custody and arrested?

"*A.* I don't quite know what you mean about—

"*The Court:* What happened just before your father was arrested?

"*A.* There was some arguments and he pushed her.

"*Q*. You tell the court just what he did.

"*A*. Well, he was in the kitchen; he pushed her and she fell and her—she fell on her face and her leg was swollen and he also grabbed her on her arms; she had black and blue marks; and he also poked her in her ribs when she complained where her ribs were hurting."

Following this incident it appears that a warrant for plaintiff's arrest for assault and battery was procured and that plaintiff pleaded guilty thereto on March 2, 1951, and was placed on probation. Meantime, on February 28, 1951, Veronica had filed suit for divorce and procured a temporary injunction restraining plaintiff from entry into the home of the parties.

Reconciliation of the parties was again accomplished. The divorce action was dismissed May 31, 1951, and plaintiff returned to the domicile and continued to live there until his wife's death in September of 1953.

The record also contains the testimony of defendant Virginia Kryst, the daughter, pertaining to the status of the property after reconciliation:

"*Q*. This was during the time after that reconciliation for about 2 years, a little better, before your mother's death, is that right?

"*A*. Yes.

"*Q*. When your father asked her for a joint deed to the property did she refuse to give it to him?

"*A*. After the reconciliation?

"*Q*. Yes.

"*A*. Yes.

"*Q*. Did she—what did she say about what she wanted to become of the property then after her death?

"*A*. It would come to 3 equal shares."

The balance of this record consists largely of the defendants' proofs concerning plaintiff's words and

actions subsequent to his wife's death, by which they assert that he recognized that his only claim to the home was as 1 of the legal heirs of his wife's estate. These proofs consist of conversations with a lawyer leading to probate of the estate, the probate proceedings where plaintiff and the defendants were declared heirs-at-law of Veronica Nogaj and various efforts of plaintiff to get defendants to buy his interest in the house, and, finally, the listing of the house for sale by all 3 of them.

To all of this plaintiff responded by admitting the facts and asserting that the lawyer who drew the condition in the deed had improperly advised him that it was valid and that his actions, plus his wife's suit for divorce, had terminated his interest.

The judge who heard this matter in the court below included the following interpretation of the condition in his opinion:

"So with that testimony before the court, I must reach the conclusion that it was their intention at the time they entered into the contract and it is the construction of the deed, the language in the deed, that if he did any physical violence to Veronica or if she had grounds for divorce and started a suit, then he lost his interest in the property."

The circuit judge likewise included in his findings of fact the following:

"They continued on further as husband and wife living together in the same house and later on from time to time and later on, the testimony is to the effect and it isn't disputed that there was some physical engagement entered into. The nature of it and the extent of it are in dispute and that subsequent thereto, Frank Nogaj was arrested and convicted upon his plea in the municipal court of the city of Jackson.

"Also, either immediately prior or subsequent to his arrest, another bill of complaint was filed for

separate maintenance after a conference between Veronica Nogaj and Mr. Best; and that lay in the files of this court for some time and was later likewise dismissed by stipulation and order."

And, finally, bearing upon the questions of re-entry and waiver, his opinion draws these conclusions:

"Up until that time, there is absolutely no testimony in this case which indicates to me that Frank thought, after he went back the last time, that he was sole owner of the property. In fact, the testimony is exactly the opposite; it preponderates very heavily toward the proposition that he felt that the mother was the owner of the property and that when she died that all 3 were the owners of the property and that each of them had a 1/3, undivided interest."

While this Court hears chancery cases *de novo* on the record, we give great weight to the findings of fact of the judge who heard the evidence. *Hartka v. Hartka,* 346 Mich 453; *Blough* v. *Steffens,* 349 Mich 365.

We find little difficulty in interpreting the conditional clause. We believe that the chancellor below was correct in reading it together with the agreement upon which it was based.

"It is a general rule of construction, well settled by the authorities, that in order to ascertain the intention of the parties, separate deeds or instruments, executed at the same time and in relation to the same subject matter, between the same parties, or, in other words, made as parts of substantially 1 transaction, may be taken together and construed as 1 instrument." 16 Am Jur, Deeds, § 175.

And we approve the interpretation which the chancellor gave—"if he did any physical violence to Veronica or if she had grounds for divorce and started a suit, then he lost his interest in the property"—as be-

ing in accordance with the intentions and expressions of the parties.

We recognize as valid the legal principles relied upon by appellant to the effect that conditions subsequent are not favored (*Barrie* v. *Smith,* 47 Mich 130; *County of Oakland* v. *Mack,* 243 Mich 279; 31 CJS, Estates, § 20b[3]; see, also, CL 1948, § 554.46 [Stat Ann 1957 Rev §.26.46]), and that breach thereof is not to be lightly inferred (*Woolcott* v. *Woolcott,* 133 Mich 643). As indicated, however, we believe that both the condition and the breach are clear and obvious.

Nor do we find grounds for reversal of the decree entered below because of failure of forfeiture or waiver on the part of Veronica Nogaj. The record discloses a repetition of physical violence—the very circumstance the condition was designed to restrain. It discloses another bill of complaint for divorce and, significantly, a temporary injunction secured by Veronica restraining plaintiff's occupancy of the domicile now in litigation.

This latter action we regard as sufficient exercise of dominion over the total property to constitute an election on the part of Veronica to forfeit the estate granted to plaintiff. 1 Am Law of Property, § 4.9; 31 CJS, Estates, § 20b(3).

See, also, *Hickox* v. *Chicago & C. S. R. Co.,* 78 Mich 615; *Hawkins* v. *Dillman,* 268 Mich 483.

Nor, in view of what the court below held to be the understanding of the parties as to title to the house up to Veronica's death, do we find any factual grounds for appellant's claim of waiver.

The most substantial question in this appeal is appellant's stated question 1 which, in the light of the interpretation previously given, we rephrase as follows:

"Is a condition subsequent in a deed to tenants by the entireties, which condition provides for vesting of sole title in the wife upon her husband's committing physical violence against her or giving grounds for divorce, and upon institution by her of divorce or separate maintenance proceedings, void as against public policy as encouraging divorce and separation?"

Appellant relies upon 2 principles of law. The first is that contracts or devises in general restraint of marriage are void as in violation of public policy. *Maddox* v. *Maddox's Administrator*, 11 Gratt (52 Va) 804; 3 Pomeroy's Equity Jurisprudence (5th ed), § 931; 72 ALR 1113 at 1114. The second is that agreements which have the effect of inducing divorce or separation are likewise against public policy and void. *Maynard* v. *Maynard*, 329 Mich 247; *Day* v. *Chamberlain*, 223 Mich 278; *Conant* v. *Stone*, 176 Mich 654.

While these rules appear almost as much honored in the exception as in the observance (39 Mich L Rev 1288), we cannot in any event find them applicable to our current facts.

No cases are called to our attention wherein the condition subsequent was of the character of the one we now consider. Nor do we think that the condition we have described is within the public policy prohibitions just noted.

The sole consideration for the deed from Veronica Nogaj to her husband was his performance of the condition. The condition was, as noted, a husband's undertaking not to commit physical violence upon his wife, nor to give her grounds for divorce. These same undertakings are involved in the marriage vows.

We do not read this condition as an inducement toward divorce or separation. On the contrary, we read it an apparently somewhat futile inducement

toward maintenance of a peaceful marital state. The intention of the parties was obvious. It was adequately expressed in the condition. There was clear proof, as the chancellor found, of both breach and forfeiture.

Affirmed. Costs to appellees.

Dethmers, C. J., and Carr, Kelly, Smith, Black, and Voelker, JJ., concurred.

Kavanagh, J., took no part in the decision of this case.