*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALBRIDGE ALDINGER, LLC, formerly known as WALBRIDGE ALDINGER COMPANY,

Plaintiff-Appellant,

v

JOHN CARTER,

Defendant-Appellee.

UNPUBLISHED
December 17, 2019

No. 345116
Wayne Circuit Court
LC No. 17-012896-CB

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Walbridge Aldinger, LLC, formerly known as Walbridge Aldinger Company, appeals as of right an order granting summary disposition to defendant, John Carter. On appeal, plaintiff argues that the trial court erred when it determined that it could not exercise either limited personal jurisdiction or general personal jurisdiction over defendant. Finding no error in the trial court's analysis and conclusions, for the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On March 16, 2016, D&N, of which defendant was the principal, entered into a subcontract with plaintiff to provide electrical work for a project owned by General Motors, LLC. The subcontract included the following clause:

This Subcontract shall be governed by the laws of the State of Michigan, unless provided otherwise by the Agreement Between Owner and Contractor. Both the Subcontractor and the Contractor agree that resort to litigation in connection with this Subcontract shall only be to courts of applicable jurisdiction and venue located with the County of Oakland, State of Michigan or the U.S. District Court for the Eastern District of Michigan.

-1-

On February 18, 2016, defendant executed a personal guarantee for "all of the obligations, warranties, duties, and undertakings" due under the subcontract in order to "induce [plaintiff] to enter into the [s]ubcontract."[1] Unlike the quoted language in the subcontracting agreement, there was no similar language in the personal guarantee relative to "courts of applicable jurisdiction." D&N failed to maintain the project schedule causing plaintiff to have to pay to the International Brotherhood of Electrical Workers Local Union 613 (IBEW) $150,000 to ensure that the IBEW would continue to "provide[] additional electricians to D&N for the [p]roject." "[Plaintiff's] $150,000 deposit was refundable so long as D&N paid certain fringe benefit contribution obligations. In the event of a default by D&N, [plaintiff] would forfeit its $150,000 deposit." D&N failed to pay its FBC Obligations causing plaintiff to forfeit its $150,000 deposit.

D&N breached the subcontract in a number of ways, such as by failing to adequately staff the project, failing to meet project deadlines, failing to pay subcontractors, and suppliers, allowing liens to be filed against the project, filing for bankruptcy, and demobilizing and abandoning the project while in a payment dispute with plaintiff, causing plaintiff "significant damages." Despite demands for payment, defendant "failed and refused to make any payment."

Plaintiff's executive vice president, Randy Abdallah, provided an affidavit wherein he discussed defendant's contacts with Michigan. According to Abdallah, those contacts began around 2014, when defendant traveled to plaintiff's Detroit office to "solicit work" from plaintiff. In his affidavit Abdallah also asserted: "During the meeting in Detroit, the parties discussed a strategic partnership (the "Strategic Partnership")—through which [plaintiff] would subcontract to D&N work on construction projects in the South, specifically including General Motor's ("GM") facility in Georgia." Also, Abdallah proffered that during 2014, 2015, and 2016, defendant visited plaintiff's Detroit office on multiple occasions to discuss the strategic partnership. Defendant also had "numerous phone conferences" with plaintiff in connection with the strategic partnership. Defendant allegedly participated in numerous—sometimes even weekly—telephone calls with plaintiff before and after D&N was awarded the subcontract in order to discuss the progress D&N was making on the project. Defendant also sent numerous emails to plaintiff concerning both the strategic partnership and the subcontract.

In the trial court,[2] defendant asserted that he is a Florida resident. Defendant admitted to visiting "Michigan on two or three occasions several years ago to discuss potential work and [his] company's ongoing business relationship with [plaintiff]." Defendant further asserted the last time he came to Michigan was in 2015 and that the subcontract was negotiated in Florida between himself and fellow Florida resident, John Rakolta, Jr.[3] Defendant denied ever coming to Michigan to discuss the personal guarantee or subcontract.

---

[1] Defendant claims that he did not sign the personal guarantee and that one of his employees, Joann Lowry, stamped his name to the guarantee.

[2] On appeal, this Court did not receive any materials from defendant.

[3] Rakolta is plaintiff's president and owner.

On August 29, 2017, plaintiff filed a complaint against defendant alleging two claims for relief: (1) breach of personal guarantee and (2) attorneys' fees and expenses. Plaintiff alleged that the personal guarantee was a valid and enforceable contract, wherein defendant "personally guaranteed all of D&N's obligations, warranties, duties, and undertakings owed to [plaintiff] under the [s]ubcontract." Defendant did not answer and a default was entered.

On February 12, 2018, defendant filed a motion to set aside the default judgment and for summary disposition for, among other issues, a lack of subject-matter jurisdiction, and a lack of personal jurisdiction. Defendant argued that the contract at issue was negotiated in Florida between two Florida residents for a project in Georgia. As such, there was no long-arm jurisdiction, and, even if there was, exercising jurisdiction in this case would violate the Due Process Clause because defendant did not sign the personal guarantee and the project was located in Georgia. Additionally, defendant argued that the trial court did not have general personal jurisdiction over defendant because he did not sign the personal guarantee, and, even if he had, he was not bound by the forum-selection clause in the underlying subcontract.

On August 3, 2018, the trial court issued a written opinion on defendant's motions, initially determining that it could not exercise general personal jurisdiction over defendant. In so deciding, the trial court stated that the personal guarantee did not contain a forum-selection clause and that plaintiff failed to provide any caselaw indicating that a guarantor is bound by the forum-selection clause in an underlying contract. The trial court next considered whether it could exercise limited personal jurisdiction over defendant and found that Michigan's long-arm statute reached defendant because he transacted business within the state. However, the trial court found that it would not comport with due process to exercise jurisdiction over defendant because defendant "could not have reasonably foreseen that he would be brought into court in Michigan given the limited number of times [defendant] travelled to Michigan, the execution of all pertinent documents by [defendant] in his home state, and the performance of the Subcontract entirely in the South." Accordingly, the trial court determined that it could not exercise limited personal jurisdiction over defendant and in accordance with its findings, the trial court entered an order granting defendant's motion to set aside the default judgment and an order granting defendant's motion for summary disposition. This appeal then ensued.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erred when it determined that it could not exercise limited personal jurisdiction over defendant. Plaintiff argued this issue in the trial court, hence it is preserved for appeal. *Lenawee Co v Wagley*, 301 Mich App 134, 164; 836 NW2d 193 (2013), lv den 495 Mich 900 (2013). This Court reviews a trial court's decision on a motion for summary disposition de novo. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012), lv den 491 Mich 944 (2012). This Court also reviews de novo whether a court may exercise personal jurisdiction over a defendant. *Id.* "When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Id.* at 221. "The plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition." *Id.* (quotation marks and citation omitted). "The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence

submitted by the parties." *Id*. "Thus, when allegations in the pleadings are contradicted by documentary evidence, the plaintiff may not rest on mere allegations but must produce admissible evidence of his or her prima facie case establishing jurisdiction." *Id*.

As previously stated, plaintiff argues that the trial court erred when it determined that it could not exercise limited personal jurisdiction over defendant. "When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court employs a two-step analysis." *Yost*, 295 Mich App at 222. "First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment." *Id*. (quotation marks and citation omitted). "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Id*. at 222-223.

Michigan's long-arm statute provides that the "transaction of any business within the state" constitutes "a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over" an individual or corporation "and to enable the court to render personal judgments" arising out of that business relationship. MCL 600.705; MCL 600.715. "The standard for deciding whether a party has transacted any business . . . is extraordinarily easy to meet" such that "even the slightest transaction" can be sufficient to bring a defendant within the reach of Michigan's long-arm statute. *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 430; 633 NW2d 408 (2001) (internal citations and quotation marks omitted).

Pursuant to these statutory definitions and our case law, defendant's actions constituted the "transaction of any business" in Michigan. Regardless of the frequency of visits or their dates, the record clearly reveals that defendant visited plaintiff's Detroit office on numerous occasions over the course of three years to discuss a partnership. Defendant also communicated via e-mail and telephone with plaintiff who is based in Michigan.

"Having found that defendant fell within the scope of the Michigan long-arm statute, we next must consider whether the exercise of personal jurisdiction over defendant[s] would offend due process." *WH Froh, Inc v Domanski*, 252 Mich App 220, 230; 651 NW2d 470 (2002). In order to make such a determination, this Court utilizes a three-part test to determine whether the exercise of limited personal jurisdiction comports with due process:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Yoost*, 295 Mich App at 223 (quotation marks and citation omitted).]

"When undertaking a due process analysis case by case, a court should examine the defendant's own conduct and connection with the forum to determine whether the defendant should reasonably anticipate being haled into court there." *WH Froh, Inc*, 252 Mich App at 230.

The first part of the test requires "purposeful availment," which is "a deliberate undertaking to do or cause an act or thing to be done in Michigan . . . ." *Id*. at 230-231. "Contacts with a forum state that are merely 'random,' 'fortuitous,' or 'attenuated' may not be the basis for haling a defendant into a foreign jurisdiction." *Oberlies*, 246 Mich App at 434 (citation omitted). "The defendant must deliberately engage in significant activities within a state, or create continuing obligations between himself and residents of the forum to the extent that it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Vargas v Hong Jin Crown Corp*, 247 Mich App 278, 285; 636 NW2d 291 (2001) (quotation marks and citation omitted).

Here, defendant, as his company's representative, entered into a partnership and then subcontract with a Michigan business. In order to do so, defendant traveled to Michigan multiple times and remained in contact with plaintiff via e-mail and telephone. These contacts were not sufficient minimum contacts with Michigan to give the trial court personal jurisdiction over defendant. See *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 630-631 (2004) (agreeing with the California Court of Appeals' holding "that accepting a bid for drafting services from a California company, telephoning California, mailing documents to and from California, receiving a visit from a representative of the California company at the Pennsylvania job site, executing a purchase order, and receiving the requested drawings did *not* provide the minimum contacts necessary to make the Maryland corporate defendant subject to jurisdiction in California."). This is particularly true because defendant's contacts with Michigan were all done in defendant's role as a representative of D&N and not in an individual capacity. See *Arkansas Rice Growers Coop, Ass'n v Alchemy Indus, Inc*, 797 F2d 565, 574 (CA 8,1986) ("The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity."). Thus, defendant did not purposefully avail himself of the privilege of conducting activities in Michigan.

The second part of the test requires that the defendant "must, in a natural and continuous sequence, have caused the alleged injuries forming the basis of the plaintiff's cause of action." *Oberlies*, 246 Mich App at 437. "It is fundamental that [f]or limited personal jurisdiction to attach, the cause of action must arise from the circumstances creating the jurisdictional relationship between the defendant and the foreign state." *Id*. at 435 (quotation marks and citations omitted).

Although defendant traveled to Michigan and remained in contact with plaintiff, who was located in Michigan, the subcontract and personal guarantee were not negotiated or executed in Michigan. Defendant asserts, and plaintiff does not dispute, that the subcontract and personal guarantee were negotiated and executed in Florida for work to be done in Georgia. The cause of action arises from the breach of the subcontract and subsequent breach of the personal guarantee—the connection of both contracts to Michigan is, at most, tenuous. Thus, it cannot be said that the cause of action arose from "from the circumstances creating the jurisdictional relationship between the defendant and [Michigan]." *Id*.

The third part of the test "considers whether the defendant's activities were substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable, i.e., whether Michigan's exercise of jurisdiction comports with traditional notions of fair play and

substantial justice." *WH Froh, Inc*, 252 Mich App at 232. Here, defendant's activities were not substantially connected with Michigan to make the exercise of jurisdiction over defendant reasonable. Defendant's visits to Michigan occurred because plaintiff is a Michigan business, not because defendant was seeking business opportunities in Michigan. The project at issue was based in Georgia and the contracts at issue were negotiated and executed in Florida. Furthermore, defendant's contacts with Michigan were made as a company representative, not as an individual. Under these circumstances, it would not comport with traditional notions of fair play and substantial justice to hale defendant into a Michigan court. *WH Froh, Inc*, 252 Mich App at 230.

Next, plaintiff argues that the trial court erred when it found that it could not exercise general jurisdiction over defendant. Plaintiff contends that defendant consented to Michigan jurisdiction when he executed the personal guarantee. Essentially plaintiff argues that the forum-selection clause in the subcontract binds defendant, who guaranteed the subcontract, and thus allows the trial court to exercise general personal jurisdiction over defendant. Accordingly, plaintiff argues, the trial court could exercise general jurisdiction over defendant.

We concur with plaintiff's assertion that a party can consent to jurisdiction in a contract. MCL 600.745(2). MCL 600.701 provides that a Michigan court can exercise general personal jurisdiction over a party if the party consents. In fact, this Court has stated that "Michigan's public policy favors the enforcement of contractual forum-selection clauses . . . ." *Turcheck v Amerifund Financial, Inc*, 272 Mich App 341, 345; 725 NW2d 684 (2006)

In addition to the subcontracting agreement, there was a personal guarantee stating, in pertinent part:

> **John Carter** (hereafter "Guarantor") guarantees to Walbridge Aldinger Company (hereafter "Walbridge") the due and punctual performance by **D & N Electric** (hereafter "Subcontractor") of each and all of the obligations, warranties, duties and undertakings of the Subcontractor under or pursuant to the Agreement by and between Walbridge and Subcontractor for the **GM IT Center Atlanta, GA** (hereafter "Subcontract"), including, for greater certainty, the total performance of the Subcontract and the due payment and discharge of all sums of money and liabilities due, owing or incurred, or payable and unpaid, by the Subcontractor under or pursuant to the Subcontract or consequent upon or arising out of any breach of the terms of the Subcontract by the Subcontractor (collectively, the "Guaranteed Obligations"), when and if performance of any such Guaranteed Obligations shall become due under or pursuant to the provisions of the Subcontract.

For purposes of our analysis of this issue on appeal, we presume, contrary to defendant's assertions, that defendant signed the personal guarantee. Even with that assumption, it is clear that defendant was a party to the personal guarantee, but defendant was not a party to the subcontract. Under Michigan law, "[i]t is a general rule of construction, well settled by the authorities, that in order to ascertain the intention of the parties, separate deeds or instruments, executed at the same time and in relation to the same subject matter, between the same parties, or, in other words, made as parts of substantially 1 transaction, may be taken together and

construed as 1 instrument." *Nogaj v Nogaj*, 352 Mich 223, 231; 89 NW2d 513 (1958) (quotation marks and citation omitted). The subcontract and personal guarantee undisputedly involve different parties and appear to have been entered into on different dates. As stated above, defendant is a party to the personal guarantee, but not the subcontract, and D&N is a party to the subcontract, but not the personal guarantee. Accordingly, the subcontract and the personal guarantee should be read as independent legal documents. Therefore, the forum-selection clause in the subcontract does not bind defendant who is only a party to the personal guarantee.

This conclusion is consistent with the conclusion reached by the New Jersey Superior Court, Appellate Division when considering this issue. In *YA Global Investments, LP v Cliff*, 419 NJ Super 1, 10-11; 15 A3d 857 (App Div, 2011), that court determined that the forum-selection clause in an Exchange Agreement did not bind the guarantors, the Hacketts, because "the entire thrust of the Exchange Agreement is that there are only two parties to it, Seaway and YA, . . . [and] because the Hacketts were not parties to the Exchange Agreement, they are not bound by its forum-selection clause."

This conclusion is also consistent with a decision from the United States District Court for the Southern District of Indiana, who, when considering this issue, stated that a forum-selection clause in an underlying contract did not bind the guarantor defendants because the defendants were not parties to the underlying contract. *Kimball Int'l, Inc v Warmack*, opinion of the United States District Court for the Southern District of Indiana, issued March 22, 1989 (Case No. IP88-460-C), p 2 n 2. In support of its conclusion, the court cited caselaw explaining that "[a] guaranty is an independent contract to assume liability if the primary obligor defaults in performance or payment." *Id.*

Here, the trial court correctly held that defendant was not a party to the subcontracting agreement which contained the forum-selection clause. Defendant was a personal guarantor, however, the personal guarantee was a, independent, separate agreement intended to transfer liability to defendant in the event the primary obligor, (D&N) defaulted. Simply stated, because defendant was not a party to the subcontract agreement, he is not bound by the forum-selection clause in that agreement.

For the reasons set forth herein, we concur with the trial court that it could not exercise limited personal jurisdiction over defendant because doing so would not comport with traditional notions of fair play and substantial justice to hale defendant into a Michigan court. *WH Froh, Inc*, 252 Mich App at 230. Further, for the reasons stated more fully herein, we concur with the findings of the trial court that the forum-selection clause in the subcontract did not give the trial court general jurisdiction over defendant as a guarantor.[4]

---

[4] We recognize that plaintiff also argues that defendant is "closely related" to D&N and is thus bound by the forum-selection clause even though D&N, and not defendant, was a signatory to the subcontract. Plaintiff did not make this argument in the trial court. "Issues raised for the first time on appeal are not ordinarily subject to review." *Gaudreau v Kelly*, 298 Mich App 148, 169;

Affirmed.  No costs are awarded.  MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

826 NW2d 164 (2012) (quotation marks and citation omitted).  Accordingly, this Court will not consider plaintiff's new argument.